IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHELLE A. GORDON,** | **CASE NO. 1:19-CV-02662** |
| Petitioner, | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **MATHIEU GRUNIN,** | |
| Respondent. | **TEMPORARY RESTRAINING ORDER AND SHOW CAUSE ORDER** |

This civil action is before the Court on the Verified Petition For Return Of Children To Israel And Issuance Of Show Cause Order ("Petition") made pursuant to the Convention on Civil Aspects of International Child Abduction ("Hague Convention"). (Doc. No. 1.) Subsequent to her filing of the Petition, Petitioner filed her Request To Expedite Proceedings Pursuant To Hague Convention Law With Incorporated Memorandum Of Law ("Request"), wherein Petitioner requests expedited consideration of her Petition and the issuance of a Show Cause Order to be served by the United States Marshal Services requiring the appearance of the Respondent before this Court to: (i) ensure that the parties' children are not removed from this Court's jurisdiction; (ii) collect the children's travel documents; and (iii) schedule an expedited evidentiary hearing. (Doc. No. 4.)

1. **Factual Allegations Set Forth in the Verified Petition**

Petitioner and Respondent are the mother and father, respectively, of S.G., who was born in 2009 in Israel, and Z.G., who was born in 2014 in Israel. (Doc. No. 1 at ¶¶ 12, 13.) Petitioner and Respondent are both named as the children's parents on the children's birth certificates. (*Id.* at ¶ 15.) Petitioner, a geneticist, was offered a temporary post-doctoral fellowship position at Case Western

Reserve University in Cleveland, Ohio, and the parties came from Israel to Cleveland on January 29, 2018 after having agreed that the family would temporarily live in Cleveland, Ohio for approximately two years, with the potential to stay for a third year. (*Id.* at ¶¶ 11, 25, 26, 35, 42.) Petitioner is the sole source of income for the family and must financially support the family because Respondent earns only a minimal stipend associated with his partial acceptance into a Talmudic scholar program. (*Id.* at ¶¶ 32, 47.) Soon after arriving in Ohio, the parties' marriage began to break down, and in April 2019, the parties separated, with Petitioner and the children continuing to live in the temporary home they have lived in since arriving in Cleveland, and Respondent, who is a Talmudic scholar, living in a room above a house that has been converted to a synagogue in the Cleveland area. (*Id.* at ¶¶ 10, 48, 50.) Respondent has told Petitioner that the children are not returning to Israel at the conclusion of the temporary post-doctoral fellowship at the end of January 2020 and that he has made the unilateral decision to remain with the children in the United States. (*Id.* at ¶ 59.) Respondent took possession of Z.G.'s passports and will not tell Petitioner where they are located, and Petitioner believes Respondent has hidden Z.G.'s passports at a friend's home. (*Id.* at ¶ 57.)

 2. **Law and Analysis**

Consistent with paragraph C under the Relief Requested in her Petition, Petitioner's proposed Show Cause Order attached to her Request includes a request for a provision prohibiting the parties from removing their children, S.G., born in 2009, and Z.G., born in 2014, or causing the children to be removed from the jurisdiction of this Court, pending final disposition of the Petition. The Court construes this request as one for a provisional remedy pursuant to 22 U.S.C. § 9004.[1] (Doc. Nos. 1,

---

[1] Petitioner also seeks the following relief: "A. That this Court issue an Order directing the prompt return of the children to their habitual residence of Israel in accordance with Petitioner's rights of custody under Israeli law and Articles 3, 5*a* and 18 of the Convention; B. That this Court issue a Show Cause Order forthwith, scheduling an initial show cause and

2

4-1.) Given the nature of the provisional remedy sought, specifically ordering that neither party may remove the children from this Court's jurisdiction during the pendency of these proceedings, the Court construes this portion of the Petition as a motion for a temporary restraining order. *See Lawrence v. J. Lewis*, No. 1:15-cv-191, 2015 WL 1299285, at *1 (S.D. Ohio Mar. 23, 2015) (citing *Marquez v. Castillo*, No. 8:14-cv-2407-T-30TBM, 2014 WL 5782812, at *2 (M.D. Fla. Nov. 6, 2014)).[2]

The Court must evaluate Petitioner's request for provisional relief, i.e., ordering the parties not to remove the children from this Court's jurisdiction during the pendency of these proceedings, pursuant to Federal Rule of Civil Procedure 65, which authorizes the Court to grant a temporary restraining order or a preliminary injunction. In determining whether to grant injunctive relief, the Court must consider four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002). The Court must consider these same

---

scheduling hearing on the first available date on the Court's calendar; C. That this Court's Show Cause Order also include a provision….taking into the Court's possession all of the children's passports and any other travel documents; D. That this Court's Show Cause Order be served on the Respondent by the United States Marshal Service; E. That this Court issue an Order directing the Respondent to pay the Petitioner's reasonable and necessary expenses, including but not limited to attorneys' fees, suit money, expenses, and costs; and F. That this Court grant any such further relief as justice and the Petitioner's cause may require." (Doc. No. 1.)

[2] As the Court in *Lawrence v. Lewis* noted, "[a] respondent is entitled to notice of the proceedings 'in accordance with the applicable law governing notice in interstate child custody proceedings.' 22 U.S.C. § 9003(c). 'In the United States, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction Act ("UCCJA") govern notice in interstate child custody proceedings.' *Brooke v. Willis*, 907 F.Supp. 57, 60 (S.D. N.Y.1995) (citing *Klam v. Klam*, 797 F.Supp. 202, 205 (E.D.N.Y.1992)). The PKPA provides that '[b]efore a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given….' 28 U.S.C. § 1738A(c). However, nothing in the statute appears to prevent a temporary restraining order without notice that maintains the status quo as to physical custody where such an order is otherwise appropriate under Rule 65(b)." 2015 WL 1299285, at *1 n.2.

factors in determining whether to issue a temporary restraining order or a preliminary injunction. *Northeast Ohio Coalition for Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006).

The Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1).

The Court finds that Petitioner has made the requisite showing that the children are habitual residents of Israel, that retention by Respondent here in the United States would breach Petitioner's rights to custody of the children[3], and that Petitioner has been continually exercising her custodial rights and will continue to do so, but for Respondent's retention of the children. Therefore, the Court finds that Petitioner has shown a sufficient likelihood of success on the merits.

Based upon the facts set forth in the Petition, Respondent has told Petitioner that his plans are to stay in the United States, and not allow her to return to Israel with the children in January 2020 when Petitioner's post-doctoral fellowship at Case Western Reserve University is completed, in contravention of the parties' agreement when they came to the United States. In other words, Respondent plans to keep or retain the children in the United States and as part of that plan, Respondent has hidden Z.G.'s passports from Petitioner. Specifically, Petitioner believes Respondent

---

[3] See Affidavit of Israeli Law executed by Jay Hait. a lawyer in good standing in Israel, qualified to interpret the laws of Israel, licensed to practice law in Israel since 2009, and licensed to practice law in New York since 1997. (Doc. 2.) In his Affidavit, Mr. Hait avers that under Israeli law, both parents are the natural legal guardians of their minor children and both of them have custody of their minor children. At the present, according to Mr. Hait, the parties have the joint legal guardianship and custodial rights over the children by operation of law in accordance with Israeli law.

4

has given them to a friend for hiding. These facts suggest that Respondent could solicit the help of friends to remove the children from this jurisdiction.

The Court does acknowledge that the Petition indicates that the children are living with Petitioner and not Respondent and that Petitioner earns more income and therefore, has more financial resources than Respondent. Indeed, the Petition does not include any facts associated with visitation with, or access to the children by Respondent, including who, if anyone, watches or cares for the children while Petitioner is performing her work as a post-doctoral fellow at Case Western Reserve University and the relationship or allegiance of any such caregiver to Respondent. And, certainly, there is no assertion that Respondent has absconded with, or removed the children from their temporary home with Petitioner. Thus, the facts in this case are distinguishable from the facts at issue in the case cited by Petitioner, *Alcala v. Hernandez*, No. 4:14-CV-4176-RBH, 2014 WL 5506739 (D.S.C. Oct. 30, 2014), and other cases this Court has reviewed.[4] While this is a closer call, however, the Court does find that there are sufficient facts asserted in the Petition to suggest that in furtherance of his stated plan to stay in the United States and keep his children in the United States with him, Respondent may attempt to remove the children from this Court's jurisdiction before the final disposition of the Petition. Were Respondent to flee the jurisdiction and conceal the children prior to a hearing before this Court, Petitioner would suffer irreparable harm.

---

[4] In *Lawrence v. Lewis*, the mother/respondent had left the United Kingdom with the parties' child and was in Ohio when the father/ petitioner filed his petition pursuant to the Hague Convention. 2015 WL 1299285, at *1. In *Jenkins v. Jenkins*, No. 03-08-CV-037, 2008 WL 483312 (S.D. Ohio Feb.19, 2008), the mother/petitioner and father/respondent were citizens of Israel, as was their child, who had relocated temporarily to Ohio; the mother wanted to return with the child to Israel and had requested that the father/respondent return the child to Israel but he had refused, but the father/respondent had physical custody of the child. In *Aldape v. Kamash*, No. 3:15 CV 2076 (N.D. Ohio Oct. 7, 2015), the father/petitioner had filed a petition under the Hague Convention against the mother/respondent after she had removed their child from Mexico without the father's consent and there was evidence suggesting that the respondent would take the child to Canada to avoid process.

5

In terms of whether the issuance of the temporary restraining order would cause substantial harm to others or the public, the Court finds that it would not. All that the temporary restraining order will do is prevent the parties from removing the children from the jurisdiction of this Court, or maintain the status quo.

The Court also finds that the public interest is served by granting the provisional relief sought. "The Hague Convention seeks to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as secure protection for rights of access." *Maxwell v. Maxwell*, 588 F.3d 245, 250 (4th Cir. 2009) (quoting Hague Convention, pmbl., 19 I.L.M. at 1501) (internal quotations omitted.) It is in the public interest to have the matter adjudicated on the merits.

Since Petitioner seeks a temporary restraining order precluding Respondent from removing the children from this jurisdiction without notice to Respondent, the Court must consider whether or not Federal Rule of Civil Procedure 65(b)(1)'s requirements are met. Petitioner's attorneys have not certified in writing that any efforts have been made to give notice to Respondent. Moreover, Petitioner's attorneys have not set forth specific reasons why notice should not be required. What Petitioner's attorneys do assert is that "[t]he issuance of a Show Cause Order….without notice to the Father will not prejudice him and does not make any determination on the merits of the Petition;" and "[t]he only effect of this Court issuing a show Cause Order will be to ensure that the children are not removed from the Court's jurisdiction before the merits of the Petition for Return can be heard." (Doc. No. 1 at ¶¶ 77. 79.) The Court has already concluded that were Respondent to take the children and flee this jurisdiction before a hearing before this Court is held, Petitioner would certainly suffer

6

irreparable harm. For the same reasons, notice would defeat the purpose of the provisional relief sought. Therefore, the Request is **GRANTED**.

Accordingly, **IT IS HEREBY ORDERED AND DECREED:**

1. The Petitioner, Michelle A. Gordon, and the Respondent, Mathieu Grunin, are prohibited from removing the children, S.G., born in 2009, and Z.G., born in 2014, or causing the children to be removed from the Northern District of Ohio until the earlier of either (a) fourteen (14) days; or (b) until this Court issues a further order allowing removal;

2. The Respondent shall appear, with all passports for the children in his possession, custody, or control, before this Court on the 26th day of November, 2019, at 9:00 a.m. in Courtroom 16A of the United States District Court for the Northern District of Ohio, located at *Carl B. Stokes U.S. Court House*, 801 West Superior Avenue, Cleveland, Ohio 44113. The initial appearance shall be considered an initial show cause hearing and scheduling hearing, so that the Court can confirm that the children are physically located within the jurisdiction of this Court, collect the children's passports, and so that a date may be set for an expedited evidentiary hearing on the merits of the Petition for Return. The Respondent may appear with or without counsel; and

3. If the Respondent either fails to appear on the 26th day of November, 2019, at 9:00 a.m. with all passports for the children in his possession, custody, or control, or removes the children or causes the children to be removed from the jurisdiction of this Court, the Court may issue a warrant for the arrest of the Respondent and appearance for a contempt hearing; and

4. A copy of this Order, and a copy of the Petition for Return, together with all attachments and all other filings, shall be served upon the Respondent on or before the 19th day of November, 2019, by the United States Marshal; and

5. At the Show Cause Hearing, the Respondent shall surrender any passports and other travel documents for the children in his possession, custody, or control and shall surrender any passports and other travel documents for the Respondent to this Court for safekeeping by the Clerk of Court.

**IT IS SO ORDERED.**

Date: November 15, 2019

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE